UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :      No. 4:CR-04-0027
                                :
       vs.                      :
                                :
DONALD R. MILLER                :      (Judge Muir)

OPINION

MUIR, District Judge

I.   Introduction.

On October 17, 2005, after a five-day jury trial, Defendant Donald R. Miller was found guilty of receiving or distributing child pornography, possession of child pornography, and possession of marijuana.

On December 20, 2005, Miller's privately retained trial counsel filed a motion to withdraw his appearance. On February 24, 2006, the necessary information was filed by Miller indicating that he qualified to have counsel appointed to represent him. On February 27, 2006, the Federal Public Defender's office was appointed to represent Miller.

We received Miller's presentence report on January 20, 2006. United States Probation Officer Eric W. Noll determined in the report that Miller's advisory guideline Total Offense level is 25, his Criminal History Category is I, and his imprisonment range is four years and 9 months to 5 years and 11 months. Those figures are based in part upon the Probation Officer's conclusions that three upward adjustments of 2 levels each apply

because 1) Miller possessed at least one image of a prepubescent minor or a minor under the age of 12 years of age, 2) Miller possessed between 10 and 150 images of child pornography, and 3) certain statements by Miller constitute an obstruction of justice pursuant to § 3C1.1 of the advisory guidelines.

After being granted an extension of time in which to do so, on May 18, 2006, Miller's appointed counsel filed objections to the presentence report.  Miller objects to the application of all three of the two-level upward adjustments listed in the preceding paragraph.  A presentence conference was held on May 23, 2006.

On May 24, 2006, we issued an order in which we established a briefing schedule as to Miller's objections to the presentence report.  In that order we advised the parties that if a presentence hearing were necessary or advisable, a motion for such a hearing should be filed by counsel.

The briefs filed by the parties in connection with Miller's objections to the presentence report made it clear that material facts were disputed and an evidentiary hearing was required.  On August 15, 2006, we issued an order scheduling a hearing on Miller's objections for September 15, 2006.

The hearing was held as scheduled and at its conclusion the parties requested, and we granted, an opportunity to file additional annotated proposed findings of fact and conclusions of law.  The government's annotated proposed findings of fact and

conclusions of law were filed on September 15, 2006.  Miller's annotated proposed findings of fact and conclusions of law were filed on September 22, 2006.  Miller's objections to the presentence report are ripe for disposition.

The following are the Court's findings of fact, discussion, and conclusions of law.  Findings of fact which are not disputed are noted with a "U" in parentheses after each such finding.  Findings of fact which are not disputed but as to which a party objects are noted with a "U/O" in parentheses after each such finding.

## II. Findings of Fact

1.   All of the photos at issue in this case were found on a zip disk during the execution of a search warrant at Defendant Donald R. Miller's residence on January 13, 2004.

2.   At the sentencing hearing, the government stated that it would not be relying on the images from Utah which were the subject of counts two and three, the acquitted conduct.  (U)

3.   During the sentencing hearing, the government introduced 20 images on a zip disk taken from Miller's residence.  (U)

4.   Some of the images introduced had logos, captions, or website addresses.  (U)

5.   The words used in the logos or captions or website
     addresses on some of the images are not indicative of
     what is actually depicted in the images.  (U)

6.   The first image introduced by the government from the
     zip disk was marked as Government Exhibit 1.1 and
     depicts a female standing in water.  (U)

7.   The depiction is not a digital, computer or computer-
     generated image of a minor engaging in sexually
     explicit conduct.

8.   The image does not depict graphic sexual intercourse,
     graphic or lascivious simulated bestiality,
     masturbation, sadistic or masochistic abuse, or graphic
     or simulated lascivious exhibition of the genitals or
     pubic area.

9.   The actual age of the female is unknown.  (U)

10.  The age of the female depicted in the image is most
     likely between 12 and 17 years.

11.  The focal point of the visual depiction is not the
     female's genitalia or pubic area.

12.  The female is not looking at the camera.  (U)

13.  The female appears to be contemplating something.
     (U/O)

14.  The setting of the visual depiction is not sexually
     suggestive.

15. The female is not in an unnatural pose.

16. The visual depiction does not suggest sexual coyness or a willingness to engage in sexual activities.

17. The visual depiction does not appear to be intended or designed to illicit a sexual response in the viewer.

18. The female is naked.

19. The second image introduced by the government from the zip disk was marked as Government Exhibit 1.2 and depicts a man ejaculating on a female's face.  (U)

20. The female's actual age is unknown.  (U)

21. The age of the female depicted in the image is most likely between 12 and 17 years.

22. The depiction is a digital, computer or computer-generated image of a minor engaging in graphic oral-genital sexual intercourse.

23. The third image introduced by the government from the zip disk was marked as Government Exhibit 1.3 and depicts four females who are topless.

24. The actual ages of the females are unknown.  (U)

25. The ages of the females depicted in the image are most likely between 12 and 17 years.

26. The depiction is not a digital, computer or computer-generated image of a minor engaging in sexually explicit conduct.

27.  The image does not depict graphic sexual intercourse, graphic or lascivious simulated bestiality, masturbation, sadistic or masochistic abuse, or graphic or simulated lascivious exhibition of the genitals or pubic area.

28.  The fourth and sixth images introduced by the government from the zip disk are identical to each other and were marked as Government Exhibits 1.4 and 1.5.

29.  Government Exhibits 1.4 and 1.5 depict two females who are topless.

30.  The actual ages of the females are unknown.  (U)

31.  The ages of the females depicted in the image are most likely between 12 and 17 years.

32.  The depiction is not a digital, computer or computer-generated image of a minor engaging in sexually explicit conduct.

33.  The image does not depict graphic sexual intercourse, graphic or lascivious simulated bestiality, masturbation, sadistic or masochistic abuse, or graphic or simulated lascivious exhibition of the genitals or pubic area.

34. The fifth image introduced by the government from the zip disk was marked as Government exhibit 1.4(a) and depicts one female who is topless.  (U)

35. The actual age of the female is unknown.  (U)

36. The age of the female depicted in the image is most likely between 12 and 17 years.

37. The depiction is not a digital, computer or computer-generated image of a minor engaging in sexually explicit conduct.

38. The image does not depict graphic sexual intercourse, graphic or lascivious simulated bestiality, masturbation, sadistic or masochistic abuse, or graphic or simulated lascivious exhibition of the genitals or pubic area.

39. The female's face is not fully visible.  (U)

40. The seventh image introduced by the government from the zip disk was marked as Government Exhibit 1.6 and depicts one female from the waist up who is topless.

41. The actual age of the female is unknown.  (U)

42. The age of the female depicted in the image is most likely between 12 and 17 years.

43. The depiction is not a digital, computer or computer-generated image of a minor engaging in sexually explicit conduct.

44.  The image does not depict graphic sexual intercourse,
     graphic or lascivious simulated bestiality,
     masturbation, sadistic or masochistic abuse, or graphic
     or simulated lascivious exhibition of the genitals or
     pubic area.

45.  The eighth image introduced by the government from the
     zip disk was marked as Government Exhibit 1.7 and
     depicts three naked females who are kneeling.  (U)

46.  The actual ages of the females are unknown.  (U)

47.  The ages of the females depicted in the image are most
     likely between 12 and 17 years.

48.  The depiction is not a digital, computer or computer-
     generated image of a minor engaging in sexually
     explicit conduct.

49.  The image does not depict graphic sexual intercourse,
     graphic or lascivious simulated bestiality,
     masturbation, sadistic or masochistic abuse, or graphic
     or simulated lascivious exhibition of the genitals or
     pubic area.

50.  The focal point of the visual depiction is not the
     females' genitalia or pubic areas.

51.  The setting of the visual depiction is not sexually
     suggestive.

52. The females are not in unnatural or sexually suggestive poses.

53. The visual depiction does not suggest sexual coyness or a willingness to engage in sexual activities.

54. The visual depiction does not appear to be intended or designed to illicit a sexual response in the viewer.

55. The ninth image introduced by the government from the zip disk was marked as Government exhibit 1.8 and depicts a female with her breasts exposed.  (U)

56. The actual age of the female is unknown.  (U)

57. The depiction is not a digital, computer or computer-generated image of a minor engaging in sexually explicit conduct.

58. The image does not depict graphic sexual intercourse, graphic or lascivious simulated bestiality, masturbation, sadistic or masochistic abuse, or graphic or simulated lascivious exhibition of the genitals or pubic area.

59. The tenth image introduced by the government from the zip disk was marked as Government exhibit 1.9 and depicts a female with her breasts exposed.  (U)

60. The actual age of the female is unknown.  (U)

61.  The depiction is not a digital, computer or computer-generated image of a minor engaging in sexually explicit conduct.

62.  The image does not depict graphic sexual intercourse, graphic or lascivious simulated bestiality, masturbation, sadistic or masochistic abuse, or graphic or simulated lascivious exhibition of the genitals or pubic area.

63.  The eleventh image introduced by the government from the zip disk was marked as Government exhibit 1.10 and depicts a naked female who is pulling her underpants down around her upper thighs.

64.  It is more likely than not that the age of the female depicted in the image is between 12 and 17.

65.  The depiction is not a digital, computer or computer-generated image of a minor engaging in sexually explicit conduct.

66.  The image does not depict graphic sexual intercourse, graphic or lascivious simulated bestiality, masturbation, sadistic or masochistic abuse.

67.  The focal point of the image is not on the child's genitalia or pubic area.

68.  The child's pose is sexually suggestive.

69.  The child's pose is unnatural considering the child's age.

70.  The child is almost fully nude.

71.  The visual depiction suggests sexual coyness or a willingness to engage in sexual activity.

72.  The visual depiction appears to be designed to elicit a sexual response in the viewer.

73.  The government introduced a total of eight (8) different images known as the Sabban Series.  (U)

74.  The government introduced a ninth image from the Sabban Series which was a repeat of one of the eight (8) images.  (U)

75.  Special Agent James A. Kyle testified that a female identified as Sabrina was depicted in several images which were part of the Sabban Series.  (U)

76.  Special Agent Kyle testified that the images which were part of the Sabban Series were produced between 1995 and 1999.  (U)

77.  It is more likely than not that all of the children depicted in the Sabban Series, including Sabrina, are between the ages of 12 and 17.

78.  Each of the nine depictions in the Sabban Series is a digital, computer, or computer-generated image of at least one minor engaging in sexually explicit conduct.

79. Each of the nine images in the Sabban Series image depicts graphic sexual intercourse, or graphic or simulated lascivious exhibition of the genitals or pubic area.

80. None of the images possessed by Miller which constitute child pornography depict a prepubescent minor or a minor who had not attained the age of 12.

81. Miller possessed at least 10, but fewer than 150, images of material constituting child pornography, excluding any images introduced at trial in connection with the offenses charged in counts 2 and 3 of the indictment.

82. On January 13, 2004, Miller candidly advised Special Agent Kyle that there was a small amount of marijuana in his residence.  (U)

83. Miller conceded at trial that because the marijuana was in his house, he was guilty of it.  (U)

84. At trial. Mr. Miller testified that because the marijuana was in his house it must be his.  (U)

85. Miller never testified or told Special Agent Kyle that the marijuana belonged to his wife.  (U)

86. Miller testified that he understood that the marijuana was in his wife's bedroom in a container of his wife's. (U)

87. On cross-examination, Miller testified that the
    marijuana was not his wife's.  (U)

88. During the trial, when asked whether he collected
    pornography, Miller testified that he "had a small
    collection of adult pornography, yes.  It was primarily
    Playboy images," or "Playboy centerfolds."

89. During the trial, when asked whether he had any
    "sadomasochistic pictures," Miller replied "Not that
    I'm aware of, no."

90. At the sentencing evidentiary hearing, in addition to
    the images constituting child pornography and other
    images of naked children, the government introduced
    five (5) images that could fairly be described as
    sadomasochistic pornography.

91. The zip disk which contained the images of child
    pornography also contained the sadomasochistic
    pornography images.

92. Paragraph 12 of the Presentence Report provides that
    Miller perjured himself by testifying (1) that he did
    not possess images of child pornography, (2) that he
    only had a "Playboy-like" collection of adult
    pornography and denying the existence of
    sadomasochistic pornography, and (3) that the marijuana

actually belonged to his wife when he had previously
admitted that the marijuana belonged to him.  (U)

93.  Paragraph 18 of the presentence Report provides a two
level increase to Miller's base offense level for
material which involved a prepubescent minor or a minor
under the age of 12 years.  (U)

94.  Paragraph 20 of the presentence report provides a two
level increase to the base offense level for possession
of approximately 28 images.  (U)

95.  The government's position is that the offense involved
at least ten images of child pornography pursuant to
U.S.S.G. § 2G2.2(b)(6)(A) and, therefore, the two-level
enhancement at paragraph 20 of the Presentence Report
is applicable.  (U)

96.  Paragraph 23 of the Presentence Report provides a two
level enhancement for obstruction of justice.  (U)

III.  Discussion.

The substantive issues to be resolved in this case before
sentencing Miller are whether Miller: 1) possessed any images
constituting child pornography which depict a child who is
prepubescent or under the age of 12; 2) possessed between 10 and
150 images which constitute child pornography; and 3) obstructed
justice so as to warrant a two-level upward adjustment pursuant
to United States Sentencing Guideline § 3C1.1.

14

We initially turn to Miller's two objections concerning the child pornography at issue in this case.  Before addressing the merits of these objections, it is necessary to identify the specific images upon which the government relies in contending that Miller possessed between 10 and 150 images of child pornography, and that at least one of those images depicts a prepubescent minor or a minor under the age of 12.

The probation officer's findings in the presentence report most likely incorporate all of the images introduced by the government at trial, including those pertaining to counts 2 and 3 of the indictment.  Those counts related to the discovery of certain images by an internet service provider in Utah.  The pornographic images introduced at trial in connection with those counts have been collectively referenced by the parties as the "Utah images."

Miller was found not guilty of the offenses charged in counts 2 and 3.  The government has expressly eschewed any reliance upon the Utah images to support the adjustment in paragraph 18 in the presentence report.  Consequently, the only images to consider in connection with Miller's objections to the presentence report are those which were introduced at trial as well as at the presentence hearing and are described in the findings of fact set forth above.

The first substantive issue we will address is the question of how many images possessed by Miller constitute child pornography.  In paragraph 20 of Miller's presentence report, the Probation Officer added two levels to Miller's base offense level for the possession of between 10 and 150 images constituting child pornography.

During his closing argument at the presentence hearing, Miller conceded that the images identified as the "Sabban Series" constitute child pornography.  The government introduced a total of nine images from that series into evidence.  Miller contends that because one of the images from that series is in fact a duplicate of another image, only 8 of those images should be counted.  Miller cites no authority for that position.

There is no provision in the child pornography statute or the guidelines which authorizes us to disregard an image of child pornography introduced into evidence.  Because each image of child pornography creates the harm which Congress sought to prevent by rendering that material illegal, we are of the view that duplicate images should be counted.

We also find that the image depicted in Government exhibit 1.2 constitutes child pornography.  That image depicts a man ejaculating on the face of a female whom is between 12 and 17 years of age.

The images in the Sabban Series and the image in Government exhibit 1.2 are the only ones depicting graphic sexual intercourse or simulated sexual intercourse.  However, the governing statute provides that an image depicting the "graphic or simulated lascivious exhibition of the genitals or pubic area of any person" may constitute "sexually explicit conduct" when considering if an image constitutes child pornography. 18 U.S.C. § 2256(2)(B)(iii).

In U.S. v. Villard, 885 F.2d 117 (3d Cir. 1989), the United States Court of Appeals for the Third Circuit discussed the factors a court should apply when considering whether an image depicts a "lascivious exhibition of the genitals or pubic area." (Id., at 122)  According to that case, we are to consider the following factors:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4) whether the child is fully or partially clothed, or nude;
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

U.S. v. Villard, 885 F.2d 117, 123 (3d Cir, 1989)(citing U.S. v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom.* U.S. v. Weigand, 812 F.2d 1239 (9th Cir.), *cert. denied*, 484 U.S. 856, 108 S. Ct. 164 (1987)).

We have applied each of those factors to Government exhibit 1.10 in our findings of fact 67 through 72 set forth above.  In our view an application of the factors discussed in <u>Villard</u> results in the conclusion that the image in Government exhibit 1.10 depicts a lascivious exhibition of the genitals or pubic area of a child between the ages of 12 and 17.  Such an image constitutes child pornography.

The government has proven by a preponderance of the evidence that Miller possessed eleven images of child pornography. Miller's objection to the upward adjustment in paragraph 20 of his presentence report, which is based on his possession of between 10 and 150 images of child pornography, is overruled.

We next consider Miller's objection relating to the ages of the children in the images which constitute child pornography. The Probation Officer found in paragraph 18 of the presentence report that a two-level upward adjustment was warranted because Miller possessed at least one image of child pornography depicting a child who was prepubescent or under the age of 12.

For the reasons stated above, the only images constituting child pornography are those in the Sabban Series and Government exhibits 1.2 and 1.10.  In light of our findings of fact set forth above, we conclude that none of those images depict a child who is prepubescent or under 12 years of age.  Although the images in Government Exhibits G1.8 and G1.9 may well depict a

18

child of such age, we are of the view that those images do not constitute child pornography.  After careful consideration of the evidence concerning the children in the Sabban Series, most particularly the female identified as Sabrina, we cannot conclude that it is more likely than not that one of those children was prepubescent or under the age of 12 when the photographs had been taken.  Miller's objection to the two-level enhancement in paragraph 18 of his presentence report, which is based on the alleged possession of at least one such image, is sustained.

Miller's final objection is to paragraph 23 of the presentence report, in which the Probation Officer determined that Miller's Total Offense Level should be adjusted upwards by two levels pursuant to U.S.S.G. § 3C1.1, entitled "Obstruction or Impeding the Administration of Justice."  That section, as it existed on the date of Miller's offense[1], stated the following:

> [i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.

---

1.  In deciding whether to apply the current version of the guidelines or the version existing at the time of the offense, we are required to apply the more lenient version of the guidelines. In this case, as found by Probation Officer Noll, the version existing at the time of Miller's offense is the more lenient. *See* U.S.S.G. § 1B1.11(b)(1).

The Probation Officer applied the obstruction of justice enhancement in this case based on the trial testimony of Miller concerning 1) his possession of marijuana, and 2) the nature of the adult pornography in Miller's collection.  When asked to characterize his collection of adult pornography Miller stated that "[i]t was primarily Playboy centerfolds."  When specifically asked if he possessed any "sadomasochistic pictures," he replied "Not that I'm aware of, no."  However, sadomasochistic images found on the zip disk containing child pornography were shown to the court and discussed in testimony presented to the jury (but not introduced into evidence).

When considering whether an upward adjustment for obstruction of justice should be applied as a result of a defendant's trial testimony, Application Note 2 of U.S.S.G. § 3c1.1 provides the following:

> This provision is not intended to punish a defendant for the exercise of a constitutional right.  A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), [or] refusal to admit guilt ... is not a basis for application of this provision.  In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

U.S.S.G. § 3C1.1, Application Note 2.  When considering whether a defendant's trial testimony constitutes obstruction of justice for the purposes of applying the guidelines, the Court of Appeals

for the Third Circuit has held that the government must establish that the defendant testified falsely, concerning a material matter, with the wilful intent to provide false testimony. U.S. v. Fiorelli, 133 F.3d 218, 221 (3d Cir. 1998).

The guidelines provide some guidance as to what constitutes a underline material matter for the purposes of the obstruction of justice enhancement.  Application 6 of § 3C1.1 provides that

> "Material" evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination.

U.S.S.G. § 3C1.1, Application Note 6.

The government asserts that the Defendant "testified falsely at trial about his possession of marijuana and the sado-masochistic images in his pornography collection." (Government's Brief in Response to Defendant's Objections to the Presentence Report, p. 6)

We first consider Miller's statements concerning the marijuana found in his residence.  While the search warrant was being executed at Miller's residence on January 13, 2004, Miller advised the authorities that an amount of marijuana would be found in the residence and that he used it for chronic back pain.

The following exchange occurred during the trial:

Q:  ...  Agent Kyle says that you told him that there was a
    small amount of marijuana in the residence because you
    used it for your chronic back pain.  Do you recall
    telling him that?

A:  No.  I told him that there was marijuana in the
residence.  My wife was the one who told him that
possibly it was being used for chronic back pain. ...

Q:  So you are denying that you told Agent Kyle that you
used the marijuana for chronic back pain.

A:  I am denying that.

Q:  What are you saying, it's your wife's marijuana?

A:  No.

Q:  It's your marijuana?

A:  It was in my house.

Q:  So because it's in your house, you're guilty of it.
Right?

A:  I would assume so.

Miller's testimony at trial concerning ownership of the marijuana

was more equivocal than the statements he made to the authorities

on January 13, 2004.

Although Miller's responses to government counsel's

questions may be characterized as cagey, or even evasive, we are

of the view that they are not sufficiently egregious to be

considered either material or knowingly false.  His testimony on

that point, even if believed, did not influence or affect the

issue under determination (i.e., his possession of the

marijuana).  The jury ultimately found Miller guilty of

possession of marijuana.  Under the circumstances of this case,

we are of the view that Miller's testimony concerning his

possession of marijuana does not warrant a two-level upward adjustment for obstruction of justice.

The other testimony by Miller to consider relates to the type of pornography to which he admitted collecting.  Miller was asked during the trial whether he had "sadomasochistic pictures." His response was "[n]ot that I'm aware of, no."

There is a significant distinction to be drawn between a collection of Playboy images and a collection of pornography which includes images of women being raped and tortured.  The images in a collection obviously reflect the collector's preferences and interests.  A collection entirely comprised of Playboy centerfolds may be viewed as more acceptable or "mainstream."  A collection which includes sadomasochistic pornography may well reflect interests in more deviant sexual practices, or at least in other images depicting such conduct.

The zip disk seized at Miller's residence which contained the child pornography also stored sadomasochistic images.  The jury found Miller guilty of <u>knowingly</u> possessing child pornography.  Since the zip disk containing the sadomasochistic pornography was knowingly in his possession, we are of the view that he knowingly possessed the images themselves.

Miller has not presented any basis to conclude that his possession of the sadomasochistic images occurred by some

23

accident or event of which he was unaware.  There is no basis in the record to reach such a conclusion.

Miller's testimony that he was unaware of the sadomasochistic pornography in his collection constitutes false testimony on a material matter.  His statement, if believed by the jury, would have influenced or affected their resolution of the offense charged in count 1 of the indictment (knowingly possessing child pornography).  We further find that he knowingly made the false statements in an attempt to cast his collection of pornography in a light more palatable to the jury.

The Probation Officer properly determined that the obstruction of justice enhancement applies because of Miller's false trial testimony concerning the nature of his pornography collection.  Miller's objection to the application of that enhancement is overruled.

IV.  Recapitulation of Miller's Guidelines.

Total Offense Level as per Pre-sentence Report:          25

Subtract the 2 levels added in paragraph 18 of the
presentence report pursuant to U.S.S.G. § 2G2.2(b)(1)
on the grounds that the material involved a
prepubescent minor or a minor under the age of 12:      (2)

Total Offense Level:                                     23

Criminal History Category as per Pre-sentence Report:     I

Revised Guideline Imprisonment Range:        46 to 57 months

V.   Conclusions of Law.

1.   The government's burden of proof in this case is to establish the upward adjustments by a preponderance of the evidence standard.

2.   The image depicted in G1.1 does not constitute child pornography.

3.   The image depicted in G1.2 constitutes child pornography.

4.   The image depicted in G1.3 does not constitute child pornography.

5.   The image depicted in G1.4 and 1.5 does not constitute child pornography.

6.   The image depicted in G1.4(a) does not constitute child pornography.

7.   The image depicted in G1.6 does not constitute child pornography.

8.   The image depicted in G1.7 does not constitute child pornography.

9.   The image depicted in G1.8 does not constitute child pornography.

10.   The image depicted in G1.9 does not constitute child pornography.

11.   The image depicted in G1.10 constitutes child pornography.

12. Each of the nine images in the Sabban Series
    constitutes child pornography.

13. Duplicate images of child pornography may be considered
    as separate images for the purposes of determining the
    total number of images possessed by a defendant.

14. Miller possessed a total of 11 images depicting child
    pornography.

15. None of the images of child pornography possessed by
    Miller depicts a prepubescent minor or a minor under
    the age of 12.

16. Miller's testimony at trial concerning his possession
    of the marijuana seized at his house does not
    constitute an obstruction of justice so as to warrant
    the enhancement provided in § 3C1.1 of the advisory
    guidelines.

17. Miller knowingly provided false testimony at trial on a
    material matter when he stated that he was not aware of
    any sadomasochistic images in his collection of
    pornography.

18. Miller's testimony at trial that he was unaware of any
    images of sadomasochistic pornography in his collection
    constitutes an obstruction of justice so as to warrant
    the enhancement provided in § 3C1.1 of the

advisory guidelines.

An appropriate order will be entered.


s/Malcolm Muir
MUIR, U.S. District Judge

DATE: October 3, 2006

MM:gja

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            :     No. 4:CR-04-0027
                                    :
       vs.                          :
                                    :
DONALD R. MILLER                    :     (Judge Muir)

ORDER

October 3, 2006

1.  Miller's objection to paragraph 18 of the presentence
    report is sustained.

2.  Miller's objection to paragraph 20 of the presentence
    report is overruled.

3.  Miller's objection to paragraph 23 of the presentence
    report is overruled.

4.  Miller's advisory Guideline Imprisonment Range is 46 to
    57 months.

5.  Miller shall, within 2 weeks after the date of this
    order file a brief addressing the sentencing factors
    set forth in 18 U.S.C. § 3553(a).

6.  All subsequent briefing on those factors shall be in
    accordance with the court's local rules.


                         s/Malcolm Muir
                         MUIR, U.S. District Judge


MM:gja